[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The marriage of the parties was dissolved by the court,Coppeto, J., on July 17, 1996. The July 17, 1996 judgment incorporated the parties separation agreement of the same date. Presently before the court is Mr. DiViesta's motion for modification wherein he seeks termination of alimony pursuant to paragraph 9 of the separation agreement which provides: "The Husband shall pay to the Wife the sum of $350.00 per week as alimony until her death, remarriage, cohabitation or twelve (12) years from the date of the dissolution of the marriage, the term of which shall be non-modifiable." Mr. DiViesta initially sought sale of the family home in accordance with the separation agreement which provides in pertinent part: "The Wife shall remain in the family home at 120 Sassacus Drive, Milford, Connecticut and have sole possession thereof until Jillian reaches age 19, or if the Wife cohabitates with a male . . . . At any of the occurrences mentioned hereinabove, the family home shall be sold [and the proceeds split in accordance with the agreement]." However, his counsel indicated he was not pursuing that portion of his motion.
Mr. DiViesta moves to modify on the ground that Ms. DiViesta is presently cohabitating under the terms of the agreement. The agreement itself does not define the term "cohabitation" nor does the agreement incorporate General Statutes § 46b-86(b), the so called cohabitation statute.
The defendant, Mr. Diviesta, argues that the court may not look to General Statutes § 46b-86(b), the "cohabitation statute", and may only look to the separation agreement to determine the meaning of "cohabitation." The defendant is correct in his assertion that the court may not look to General Statutes § 46b-86(b)[1] in determining the meaning of cohabitation. In Draper v. Draper, 40 Conn. App. 570, 672 A.2d 522 (1996), the parties separation agreement which was incorporated into the dissolution judgment provided "for termination of alimony upon death, remarriage, cohabitation or July 31, 2001." Id., 574. Furthermore, the separation agreement provided: "The Husband shall be permitted to seek a modification in the event of the cohabitation of the Wife. . . . For the purposes hereof, cohabitation shall be defined to mean that the Wife has entered into and maintained a relationship including cohabitation with a man under such circumstances and conditions, and over a period of at least three (3) months in any twelve (12) month period, so that the Superior Court of Connecticut concludes that the Wife CT Page 10665 and Said man are `living together'. . . ." Id., 575 n. 3. InDraper, the wife attempted to argue that the court should look to General Statutes § 46b-86(b) to determine whether she was cohabitating. The court declined to do so "because this statute was not incorporated into the parties separation agreement and the cases cited by her are, therefore, inapposite." Id., 576 n. 4. See also Mihalyak v. Mihalyak, 30 Conn. App. 516, 520-21,620 A.2d 1327 (1993).
In addition to the above reasoning for not considering the statute, our Supreme Court has held "that the trial court cannot on its own initiative consider 46b-86(b) as a ground for the termination of alimony. . . . General Statutes § 46b-86(b) is a separate and independent statutory basis for modification of alimony and is a claim which must be raised in a written motion by the party seeking to modify the award of periodic alimony."Connolly v. Connolly, 191 Conn. 468, 478, 464 A.2d 837 (1983). In the present case, the defendant did not invoke the statute as a basis for his motion for modification. Thus, the court looks to the separation agreement to determine if modification is proper. Additionally, it is noted that General Statutes § "46b-86(b) requires only a `change' of circumstances, not a `substantial change' of circumstances as required by § 46b-86(a)."[2]D'Ascanio v. D'Ascanio, 237 Conn. 481, 486, 678 A.2d 469 (1996). The evidence presented by the defendant must demonstrate a substantial change in circumstances.
Where the "agreement of the parties was ordered incorporated by reference into the dissolutions decree" as it was in the present case, "[the] judgment rendered in accordance with such a stipulation of the parties is to be regarded and construed as a contract." Barnard v. Barnard, 214 Conn. 99, 109, 570 A.2d 690
(1990). "[A] contract is to be construed as what may be assumed to have been the understanding and intention of the parties and that intention is to be determined from the language used, according to the situation of the parties and the circumstances of the transaction." Id., 117 n. 7. "The rule is that the language contained in a contract is to be given its ordinary meaning unless a technical or special meaning is clearly intended." Cogan v. Cogan, 186 Conn. 592, 596, 442 A.2d 1342
(1982). "It is appropriate for us to look at dictionary definitions in order to clarify the ordinary meaning of various terms." State v. Domian, 35 Conn. App. 714, 724, 646 A.2d 940
(1994), aff'd, 235 Conn. 679, 668 A.2d 1333 (1996). CT Page 10666
The separation agreement in the present case fails to define the term "cohabitation" thus, the court must look to dictionary definitions. The term "cohabitation" is defined as follows: "To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations." Black's Law Dictionary (6th Ed. 1990). "Furthermore, our Supreme Court has defined cohabitating as a dwelling together of man and woman in the same place in the manner of husband and wife." (Internal quotation marks omitted.)Taylor v. Taylor, 17 Conn. App. 291, 293, 551 A.2d 1285 (1989).
The court held an evidentiary hearing on the issue of cohabitation on September 9, 1997 and heard testimony from both parties. Ms. DiViesta testified that she has a relationship with a gentleman by the name of Mr. Merly and that he spends time with her, sometimes overnight sleeping in the same bed. She also testified that she took a vacation with Mr. Merly to Lake George in July of 1997 and has previously taken vacations and overnight trips with him. Mr. Merly does not keep any clothing at Ms. DiViesta's home and when he does come to her house he leaves at three or four in the morning. Ms. DiViesta also testified that she spends some time with Mr. Merly at his home, occasionally cooks for him and does his laundry and that the reason he spent more time at her home was that his own home was being renovated.
Sometime in May of 1997 Mr. Merly gave Ms. DiViesta a ring which she wore on her left hand but he took it back. Mr. Merly has a child who stayed with Ms. DiViesta for about eight days. On cross-examination Ms. DiViesta testified that Mr. Merly never moved in with her.
Mr. DiViesta testified that Mr. Merly lives approximately one and one-half or two miles from Ms. DiViesta's family residence. Mr. DiViesta kept a calendar noting the dates on which he saw Mr. Merly's vehicle parked outside of the marital residence. (Defendant's Exhibit 1.) Based on the exhibit, Mr. Merly's car was parked in Ms. DiViesta's driveway or garage three days in April, 16 days in May, 22 days in June, almost the entire month of July and six days in August. Mr. DiViesta testified that he did not pass the house on weekends or when the children were staying with him. Mr. DiViesta did not know Mr. Merly's address.
Mr. DiViesta failed to demonstrate that Ms. DiViesta is cohabitating, as that term is ordinarily defined. There was CT Page 10667 testimony that Mr. Merly's vehicle was parked outside and at times in the garage when he visited Ms. Diviesta. Based on the testimony of the parties, the court finds that Ms. DiViesta was not cohabiting within the meaning of the separation agreement. Thus, the defendant's motion for modification must be denied.
Furthermore, the defendant failed to establish that there has been a "substantial change" in circumstances such that the court should modify alimony or order a sale of the family home.
For the foregoing reasons, the defendant's motion for modification is denied.
GROGINS, J.